Ned HALL, Appellee,

v.

**FARMERS INSURANCE EXCHANGE,** Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, Farmers New World Life Insurance Company and Bob Cassity, Appellants.

No. 59584.

Supreme Court of Oklahoma.

May 21, 1985.

As Amended on Denial of Rehearing Jan. 14, 1986.

David E. Nichols, Peter T. Van Dyke, Oklahoma City, Ray H. Wilburn, Dennis King, Tulsa, for appellants.

James S. Steph, Okmulgee, for appellee.

DOOLIN, Vice Chief Justice.

This cause concerns a dispute between Appellants, who are various insurance companies doing business as Farmers Insurance Group (hereafter "Farmers"), together with their District Manager, Cassity and Appellee Hall, who for many years was an insurance agent selling policies for Farmers. Halls' association with Farmers began in April, 1962, and continued until 1978. In 1968, Hall and Farmers entered into the particular agency contract from which this litigation arose.

During the ten-year life of the contract in question, each party performed to the satisfaction of the other. Hall's agency flourished and in 1978, he had a gross income of approximately $42,000, of which some $35,000 was derived from renewal premiums paid by policyholders to whom Hall had sold Farmers policies over the years. In that same year, Farmers was sufficiently pleased with Hall to write him letters of commendation for his production.

In 1978 however, disagreements arose between Hall and Cassity concerning the types and methods of sales which were to be emphasized by Farmers agents. Their troubles deepened when Hall led a group of

other agents in protesting what was considered by them to have been the termination without good cause of a fellow Farmers agent by Cassity. After several months of increasing acrimony between the two men, Cassity notified Hall, by letter dated September 21, 1978, that Farmers was terminating his agency as of December 21, 1978.

On that date, Cassity tendered to Hall a check in the amount of $38,000 for the contract value of Hall's agency, according to the terms of the contract with Farmers. Hall refused the tender, claiming he was being wrongfully terminated and was entitled to future income from renewal premiums in the amount of $305,964.16.

In anticipation of the effective date of termination, Hall filed suit for breach of contract, alleging termination without cause and claiming bad faith on the part of Farmers and Cassity. In his Second Amended Petition, the petition upon which the action was eventually tried, Hall asked for $225,000 as the reasonable amount of future commissions from renewal premiums under the agency contract, and $6,100 for additional renewal commissions on policies sold by him and accepted by Farmers following the effective date of the termination of the contract.

The matter was tried to a jury in December, 1982, and on December 17, the jury returned verdicts for Hall and against Farmers and Cassity in the total amount claimed in his petition.

Following the jury's verdict and judgment thereon, Farmers and Cassity commenced this appeal and on June 19, 1984, the Court of Appeals Division # 1, reversed.[1] On November 13, 1984, we granted certiorari to review the Court of Appeals decision.

Based on our examination of this case, we find the opinion of the Court of Appeals should be vacated and the judgment of the trial court affirmed in part and reversed in part.

The primary issue presented by this case is whether a party to a contract which is terminable at will, upon notice, may be held liable for damages if such termination is done in bad faith. Secondarily, and if we answer the first issue in the affirmative, we must determine the proper measure of damages in the situation now before us.

## I.

Hall does not contest the right of Farmers to terminate the contract. His cause of action rests on the argument that a party to a contract terminable at will is liable in damages if it terminates without good cause and in bad faith.

The contract in question is a printed, form contract entitled Farmers Insurance Group Agent Appointment Agreement. It contains a provision that the contract may be terminated by either the agent or the company upon three months' written notice, and further contains a formula for computing the "contract value" of the agency, to be paid by Farmers to Hall upon termination.

Evidence presented at trial shows this to be the standard, agency contract drafted by Farmers which must be entered into by all its agents.

This Court has long recognized that parties should be free to contract for any lawful purpose upon such terms and conditions as they believe to be in their mutual interest. Such freedom is not absolute however, and the interests of the people of Oklahoma are not best served by a marketplace of cut-throat business dealings where the law of the jungle is thinly clad in contractual lace.

In this spirit, we have recognized, as have many jurisdictions, that each contract carries an implicit and mutual covenant by the parties to act toward each other in good faith. As we said in *Wright v. Fidelity and Deposit Co. of Maryland:*[2]

A contract consists not only of the agreements which the parties have ex-

1. 55 OBJ 1297.

2. 176 Okl. 274, 54 P.2d 1084, 1087 (1936).

pressed in words, but also of the obligations which are reasonably implied.... Every contract contains implied covenants that neither party shall do anything that will destroy or injure another party's right to receive the fruits of the contract.

▮ The implied covenant of good faith extends to a covenant not to wrongfully resort to the termination-at-will clause. As was so aptly stated by the New Hampshire Supreme Court in *Monge v. Beebe Rubber Co.:*[3]

The employer's interest in running his business as he sees fit must be balanced against the interest of the employee in maintaining his employment, and the public's interest in maintaining a proper balance between the two. We hold that a termination by the employer of a contract of employment at will, which (termination) is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract. [parenthetical term supplied].

Though it might be correctly pointed out that *Monge* concerns a contract between employer and employee rather than between an agent and principal, we find nothing in that distinction which makes the application of the rule any less desirable.

Perhaps most nearly on point with the case before us is the Massachusetts case of *Fortune v. National Cash Register Co.*[4] In that case, the plaintiff was employed under a written "salesman contract" which was terminable at will, without cause, by either party on written notice. The contract provided the plaintiff would receive a weekly salary plus a bonus for sales made with a territory assigned to him. The plaintiff, after twenty-five years of service, received a termination notice, but stayed on to complete a sale in progress. After the sale was completed, the plaintiff was asked to retire and when he refused, he was fired. The plaintiff brought suit against his employers, claiming he was not paid the bonuses he was entitled to receive for the last sale. The employer moved for a directed verdict, arguing there was no evidence of any breach of contract, and the existence of a contract barred recovery under quantum meruit. The trial court ruled the plaintiff could recover if the termination and firing were in bad faith, submitted the issue to the jury, and entered judgment on the verdict in favor of the plaintiff. On appeal, the court held that even though the salesman contract was terminable at will, there was an implied covenant of good faith in the contract, and the evidence sustained the determination the employer had discharged the plaintiff in order to avoid paying the bonuses. Therefore, the lower court's judgment was affirmed.

▮ Certainly if Farmers acted with an intent to wrongfully deprive Hall of the fruits of his contract when it terminated his agency, they would stand in breach of the implied covenant of good faith. Whether such an intent existed is an issue of fact to be decided by the jury.[5] Upon our review of the extensive record in this action, we find ample, competent evidence to support the jury's finding that Farmers did terminate Hall's agency with the clear intent to deprive Hall of the greater part of his future income from renewal premiums and to parcel that income among its other, less obstreperous agents, and so acted in bad faith.

The facts and circumstances of this case fall squarely within the philosophy of equities contained in Restatement of Agency, Second, § 454, which says:

An agent to whom the principal has made a revocable offer of compensation if he accomplishes a specific result is entitled to the promised amount if the principal, in order to avoid the payment of it revokes the offer and thereafter the

**3.** 114 N.H. 130, 316 A.2d 549 (1974).

**4.** 373 Mass. 96, 364 N.E.2d 1251 (1977).

**5.** *Reardon v. Layton & Forsyth,* 190 Okl. 444, 124 P.2d 987 (1942).

result is accomplished as the result of the agent's prior efforts.

The authors of the Restatement have succinctly set down the long-standing rule that a principal may not unfairly deprive his agent of the fruits of that agent's own labor by a wrongful, unwarranted resort to a clause in the agency contract which provides for termination at will. We find this to be an excellent rule, one which serves the cause of equity as well as the interests of the marketplace.

Having found the jury to be correct in its verdict, we must now address the issues of damages. The general rule of damages for breach of employment contracts is that the aggrieved party is entitled to recover an amount which will compensate him for all the detriment proximately caused by such breach, or which will be likely to result therefrom.[6] Specifically, an employee wrongfully discharged may recover damages commensurate with the consequential injury.[7]

In his suit, Hall sought to recover the fruits of the contract, in the form of those renewal premiums he reasonably expected to receive in the future. We note he did not seek, nor was he awarded compensation based on any speculation as to new insurance policies he might have sold. His evidence was limited to that which he had already sold and which both he and Farmers assumed would be renewed at a predictable, quantifiable rate during Hall's lifetime. There is uncontroverted testimony that such renewal premiums constituted the bulk of Hall's income, and throughout his association with Farmers he had anticipated this income because such was the usual and ordinary course of events in the insurance business and all this was well known the Farmers.

6. 23 O.S. 1981, § 21.

7. *Ditzler Dry Goods Co. v. Sanders,* 44 Okl. 678, 146 P. 17 (1915).

8. 25 O.S. 1981, § 9.

The record supports the jury's award of damages in the amount necessary to compensate Hall for that income he would have received from renewal premiums had he not been wrongfully terminated.

There was a second award of damages, the sum of $6,100, awarded to compensate Hall for the proceeds due him for renewal premiums on certain policies sold by him and accepted by Farmers during the period following his termination. In this regard, it seems clear that since Farmers enjoyed the benefits of this new business and accepted the policies without protest, it should compensate Hall at the ordinary rate of compensation which it would have paid any of its agents. We find no error in this award.

In summary, we hold that Farmers wrongfully invoked its right to terminate Hall's agency and did so for the unconscionable purpose of depriving Hall of the future payments of renewal premiums as a penalty for his having voiced his objections to controversial company actions. By its act of wrongful termination, Farmers breached the implied covenant of good faith[8] which exists in all contracts, and is therefore liable to respond in damages. The measure of Hall's damages for Farmers' breach of contract is the predictable, quantifiable amount of future income which he was entitled to receive as renewal premiums on insurance policies he had sold as a Farmers agent, both before and after he received notice of the wrongful termination.

## II.

As to the remaining proposition of error; whether Cassity was a proper party defendant, we find the trial court erred. The rule in Oklahoma is there is a presumption an agent of a disclosed principal intends by his actions to bind only that princi-

Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even though the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious.

pal and is not bound in his individual capacity unless such an intention to be bound is clearly shown to have existed.[9]

It is clear from the record here that Cassity was at all times acting as an agent between Farmers and Hall and was never considered, by any party, to be acting in his personal capacity. He is therefore, a stranger to the contract in issue and is not subject to liability arising from the contractual relationship between Farmers and Hall.[10]

We find the trial court erred in overruling Cassity's demurrer to the evidence and that portion of the judgment should be reversed.

The judgment of the Court of Appeals is therefore VACATED and the judgment of the trial court is AFFIRMED in part and REVERSED in part.

HODGES, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

SIMMS, C.J., and LAVENDER, HARGRAVE and OPALA, JJ., dissent.

---

**9.** *Moran v. Loeffler-Greene Supply Co.*, 316 P.2d 132 (Okl.1957).

**10.** *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907 (Okl.1982).