_____

No. 95-3328
_____

Comprehensive Care Corporation, *
                                 *
          Appellee,              *
                                 * Appeal from the United
          v.                     * States District Court for
                                 * the Eastern District of
RehabCare Corporation,           * Missouri
                                 *
          Appellant.        *

_____

Submitted: June 10, 1996

Filed: October 22, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, MORRIS SHEPPARD ARNOLD,    Circuit
Judge, and ROSENBAUM,* District Judge.
_____

ROSENBAUM, District Judge.


     Comprehensive Care Corporation ("CompCare") was the parent of its
wholly-owned subsidiary, RehabCare Corporation ("RehabCare") until mid-
1991. Subsequent to this time, however, CompCare required additional
funding.  To secure these funds, CompCare contractually allowed RehabCare
to purchase a number of RehabCare shares.  RehabCare purchased the shares
from CompCare in October, 1992.  Thereafter, CompCare claimed  RehabCare
breached the share-purchase contract.   CompCare brought claims  of
securities fraud, breach of contract, and common law fraud.  A jury
returned a $2,581,250.00 verdict in  CompCare's favor.  In April,
1995, the district court

_____

          *The HONORABLE JAMES M. ROSENBAUM, United States
          District Judge for the District of Minnesota,
          sitting by designation.

entered judgment in the amount of the jury award. RehabCare appeals the district court's entry of judgment. We reverse.

I.

Since mid-1991, CompCare has twice sold major portions of its RehabCare stock. CompCare sold the first portion of its RehabCare shares in a public offering, retaining 48 percent of RehabCare's stock, in mid-1991. As part of this transaction, CompCare obtained two seats on RehabCare's board of directors. During the summer of 1992, CompCare decided to sell its remaining RehabCare stock. CompCare approached RehabCare, and RehabCare indicated it was willing to purchase the stock.

In early August, 1992, the parties agreed in principle that RehabCare would buy 1,875,000 shares of its stock for $8 per share. Thereafter, at CompCare's August 26, 1992, board meeting, CompCare's president reported that another buyer was willing to purchase the stock at $10 per share or more. No such offer was tendered, however, and CompCare needed to conclude the sale. At the August 26 meeting, the CompCare board authorized the stock sale to RehabCare.

On August 27, 1992, CompCare and RehabCare representatives met to discuss the pending transaction. During that meeting, RehabCare received a letter from Continental Medical Systems, Inc. ("CMS"), offering to acquire RehabCare for $10 per share. Knowing of this offer, CompCare agreed to sell the 1,875,000 shares to RehabCare for $8 per share on the condition that, if RehabCare were acquired within 12 months of the redemption, RehabCare would pay CompCare the amount by which the sale price exceeded $8 per share. The parties referred to these "stock appreciation rights" as "SARs". The parties signed a letter of intent embodying these terms, and on September 1, 1992, the redemption agreement was executed.

Meanwhile, during early August, 1992, RehabCare prepared a shareholder rights plan (a "poison pill") for consideration by its board of directors. Under the plan, if a purchaser acquired a certain percentage of RehabCare stock, the acquisition would confer preferred share rights on existing shareholders. On August 19, 1992 -- 13 days before the execution of the CompCare/RehabCare stock redemption agreement -- written materials, including a summary of the proposed plan, were sent to RehabCare's directors. At that time, CompCare's two RehabCare board representatives were James Carmany and Harvey Felsen, each of whom received a copy of the August 19, 1992, materials. Carmany was CompCare's president and chief executive officer until August 26, 1992. Felsen was a CompCare director and one of three members of CompCare's executive committee. RehabCare's board adopted the poison pill on September 21, 1992.

Also in August, 1992, when CMS first offered to acquire RehabCare, RehabCare's board decided the $10 per share offer was too low. As a result, on August 28, 1992, Rehabcare told CMS it was not interested in being acquired. On October 8, 1992, CMS raised its RehabCare bid to $11.25 per share. On October 15, 1992, RehabCare's board met and decided $11.25 per share was still too low. Although CMS and RehabCare continued to communicate, CMS did not make another offer to acquire RehabCare. RehabCare was not acquired within 12 months of the CompCare stock purchase.

CompCare filed this action on October 30, 1992, alleging securities fraud under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, breach of contract, and common law fraud. CompCare alleged that under the redemption agreement, RehabCare had a duty to pursue an acquisition. CompCare asserts that RehabCare breached this duty by adopting a poison pill and by refusing to negotiate with CMS. After a nine-day trial, the

-4-

jury returned a verdict in favor of CompCare on two of three securities fraud claims and on its breach of contract claim. The

jury found in favor of RehabCare on the common law fraud claims, and was unable to reach a verdict on CompCare's third securities fraud claim. In April, 1995, the district court entered judgment, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

## II.
### A.

RehabCare first argues it did not breach its contract with CompCare, asserting that the redemption agreement did not impose a duty to pursue an acquisition. Whether the redemption agreement imposed such a duty on RehabCare is a question of law, which we review de novo.

We begin with the plain words of the parties' September 1, 1992, redemption agreement. The agreement provides that, "[i]f within [12 months of the closing date] there occurs a 'Change of Control Event' . . . of RehabCare, then RehabCare will be required to pay CompCare" an additional sum. As a matter of law, this is not the language of a promise. Such language, instead, creates a condition precedent. Absent the occurrence of the contractually-agreed "Change of Control Event," the clause imposes no obligation on RehabCare.

Our decisions differentiate between a promise and a condition. "A promise is an assurance from one party that performance will be rendered in the future, given in a manner that the other party could rely on it." United States v. Gerth, 991 F.2d 1428, 1434 (8th Cir. 1993). A condition, by contrast, "creates no rights or duties in and of itself, but only limits or modifies rights or duties." Id. The SAR language contained no assurance that RehabCare would pursue an acquisition. The language was, instead, a conditional clause. See, e.g., Standefer v. Thompson, 939 F.2d 161, 164 (4th Cir. 1991) (phrases such as "if," "provided that,"

-6-

"when," "after," "as soon as," and "subject to" traditionally indicate conditions, not promises).

Further, contrary to CompCare's assertions, the implied covenant of good faith and fair dealing did not impose on RehabCare the duty to pursue an acquisition.  The law does not allow the implied covenant of good faith and fair dealing to be an everflowing cornucopia of wished-for legal duties; indeed, the covenant cannot give rise to new obligations not otherwise contained in a contract's express terms.  Glass v. Mancuso, 444 S.W.2d 467, 478 (Mo. 1969).  The implied covenant simply prohibits one party from "depriv[ing] the other party of its expected benefits under the contract."  Morton v. Hearst Corp., 779 S.W.2d 268, 273 (Mo. Ct. App. 1989) (citing Martin v. Prier Brass Mfg. Co., 710 S.W.2d 466, 473 (Mo. Ct. App. 1986)); see also American Business Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1142 (8th Cir. 1986) ("Each party must do nothing destructive of the other party's right to enjoy the fruits of the contract and do everything the contract presupposes they will do to accomplish its purpose.").

Here, RehabCare did nothing that deprived CompCare of its expected contractual benefits.  Certainly, the SARs had no value absent RehabCare's acquisition, but this is no more than can be said whenever a contractual condition precedent does not occur.  CompCare gambled that RehabCare would be acquired within a year of the execution of the redemption agreement.  Its gamble did not pay off.

We similarly reject CompCare's assertion that the implied covenant of good faith and fair dealing imposed a fiduciary duty on RehabCare that barred its adoption of a poison pill.  The implied covenant of good faith and fair dealing "does not transform a business relationship into a fiduciary relationship."  W.K.T. Distrib. Co. v. Sharp Elecs. Corp., 746 F.2d 1333, 1337 (8th Cir. 1984) (citing Bain v. Champlin Petroleum Co., 692 F.2d 43, 47 (8th

Cir. 1982)).  CompCare's implied covenant claims permit no recovery against RehabCare on these facts.

B.

RehabCare further argues that CompCare's securities fraud claims must fail because, as a matter of law, CompCare knew all facts material to the redemption transaction. We agree. CompCare claims the securities fraud occurred when RehabCare failed to disclose its consideration of a poison pill. But CompCare's two representatives on RehabCare's board of directors knew, well before the redemption agreement was executed, that RehabCare was considering this plan.

Knowledge obtained by a corporation's key employees, officers, and directors, obtained in the course of their duties, is generally imputed to the corporation. Acme Precision Prods., Inc. v. American Alloys Corp., 422 F.2d 1395, 1398 (8th Cir. 1970); Beetschen v. Shell Pipe Line Corp., 248 S.W.2d 66, 73-74 (Mo. Ct. App.), aff'd on other grounds, 253 S.W.2d 785 (Mo. 1952). We recognize, of course, that if the employee, officer, or director has an interest adverse to the corporation, his knowledge is not to be imputed. First Nat'l Bank of Sikeston v. Transamerica Ins. Co., 514 F.2d 981, 986 (8th Cir. 1975) (citing In re Torreyson's Estate, 442 S.W.2d 110, 117 (Mo. Ct. App. 1969)). This exception is not available here.

CompCare's representatives sat on RehabCare's board through an explicit agreement between the two corporations. Their presence was at CompCare's behest and was in -- and not opposed to -- CompCare's interest. As such, the knowledge of CompCare's directors on RehabCare's board must be imputed to CompCare. CompCare's securities fraud claims must fail.

III.

For the foregoing reasons, we reverse the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.