2001 OK CIV APP 72

**Robert W. STICKNEY, Plaintiff/Appellee and Counter Appellant,**

v.

**KANSAS CITY LIFE INSURANCE COMPANY, Defendant/Appellant and Counter Appellee.**

**No. 93,306.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 22, 2000.

Rehearing Denied Nov. 22, 2000.

Certiorari Denied Feb. 13, 2001.

Rodney C. Ramsey, Elaine R. Turner, Oklahoma City, OK, For Appellant and Counter Appellee.

Bradley D. Brickell, Richard J. Gore, Andrew J. Waldron, Oklahoma City, OK, For Appellee and Counter Appellant.

## OPINION

GARRETT, Judge:

¶1 Robert W. Stickney was employed by Kansas City Life Insurance Company (Company), pursuant to a General Agent Contract dated January 1, 1989. On November 19, 1992, Company advised Stickney that his job was at risk due to declining business and poor recruiting in the Oklahoma City agency. Instead of terminating Stickney, company representatives told him the situation would be reviewed again in March, 1993. This meeting was summarized by a memorandum dated December 2, 1992 (the memorandum).

¶2 On April 1, 1993, Stickney was terminated. He sued Company. He sought actual and punitive damages for breach of contract and an implied covenant of good faith. Four years later, Stickney amended his petition and alleged intentional infliction of emotional distress, invasion of privacy, defamation, deceit, fraud and wrongful interference with a business and/or employment relationship.

¶3 After trial, the jury returned a verdict for Stickney for $841,000.00 actual damages and $841,000.00 punitive damages. Company appealed. Stickney counter-appealed the court's order denying attorney fees.

¶4 Company contends there was no competent evidence reasonably tending to support the breach of contract claim. Company contends the contract was an employment-at-will contract which either party could terminate at any time with or without cause. Therefore, it contends the court erred in denying its motion for judgment notwithstanding the verdict.

¶5 As pertinent here, the "Kansas City Life Insurance Company Career General Agent Contract" (the contract), provided:

## 8. TERMINATION

This contract will automatically terminate upon your death. It also may be terminated by you or us, with or without cause, upon written notice mailed to the other's last known address.

Upon termination of this contract:

A. We will pay commissions directly to your agents; and

B. You agree to return any supplies, printed materials or other property we have furnished you or your agents.

## 9. GENERAL PROVISIONS

D. This is the entire contract between you and us. This contract replaces any previous contracts we have made with you. This contract will not affect:

(1) obligations you already owe us or have previously assumed; or

(2) commissions you have previously earned.

E. No modification, amendment or assignment of this contract or of commissions or payments due under this contract will be valid unless approved in writing in advance by us.

¶6 The memorandum, dated December 2, 1992, following the meeting between Allee and Stickney, contained the following:

*WORK HABITS*

. . .

You asked if your job was being threatened and my reply was yes, and we will get back together the end of March, 1993 to review where you are going and what accomplishments you have made.

¶7 Stickney argued it was "implied" in the employment contract that Company could not terminate his employment if he met the minimum production requirements contained in the contract, notwithstanding the language contained in the termination clause. Stickney contended the termination clause was ambiguous and was, therefore, subject to interpretation by the jury. However, he conceded that the contract did not provide that Company was prohibited from terminating his employment if he met the production requirements outlined in the contract. He also admitted that if he had voluntarily terminated his employment the Company could not sue him to remain in the position. Alternatively, he argued the contract's termination

provision was modified or amended as a result of the November, 1992, meeting. He said he had the impression his performance would be reviewed in March, 1993, at the end of this probationary status.

¶ 8 An employment contract which is of indefinite duration is terminable at will by either party. *Hayes v. Eateries, Inc.*, 1995 OK 108, 905 P.2d 778, citing *Singh v. Cities Service Oil Company*, 1976 OK 123, 554 P.2d 1367. The *Hayes* Court noted that *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24, 26 recognized the classic at-will rule, i.e., that "an employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong." *Hayes* argued that the at-will presumption was rebutted by a contractual promise of continued employment. He claimed he was led to believe he would be employed as long as he adequately performed his duties. He also argued that his recent promotion, together with the oral assurances, gave him a contractual claim to job security which was breached when he was terminated for reasons other than for just cause. The Supreme Court held that the employee's allegations of oral assurances of continued employment were merely vague assurances which could not be reasonably or justifiably relied on as creating some contractually based claim of continued job security or that a discharge could only be for just cause. The fact that Hayes was recently promoted did not alter the situation. *Id.*, at 784. With regard to federal cases which seem to support a claim that oral statements as alleged in *Hayes* are sufficient to submit a contract claim to the jury, the *Hayes* Court said:

> [W]e flatly reject the view that such words of mere puffery are sufficient to transform an employment-at-will situation of indefinite duration into a binding contract that the employee may be discharged only for just cause.

¶ 9 The Court held that although the issue of whether an implied contract exists is normally factual, "if the alleged promises are nothing more than vague assurances, as they are here, the issue can be decided *as a matter of law*." *Hayes*, at 783. [Emphasis supplied.]

¶ 10 Even in cases where written employment personnel manuals were alleged to constitute an implied contract containing a "just cause" provision, the Court rejected such claims. *Hinson v. Cameron*, 1987 OK 49, 742 P.2d 549; *Gilmore v. Enogex, Inc.*, 1994 OK 76, 878 P.2d 360. The Court held the promises in the manuals were not definite terms, and they lacked the specificity needed to restrict the employer's power to discharge.

¶ 11 In the instant case, Stickney's allegations that the contract's terms created an "implied" contract of continued employment if he met the production requirements and his claims that the memorandum modified the termination clause of the original contract, clearly fail under the above cases. The memorandum setting out areas needing improvement did not rise to the level of "assurances" of any kind. In fact, the tenor of the memorandum indicates a termination is more likely to occur than his continued employment. There was no statement that employment will continue if improvement occurs, and there was no restriction imposed on Company to terminate Stickney only for cause, or to wait until his efforts were reviewed in March, 1993. Moreover, there was no statement in the memorandum that it was written for the purpose of modifying the termination provision in the original contract.

¶ 12 We hold the trial court erred in submitting the breach of contract issue to the jury. It was error to allow the jury to determine whether the contract was ambiguous. As a matter of law, the trial court should have determined the evidence presented was insufficient to prove Stickney's claim that Company breached the contract by terminating him other than for cause.

¶ 13 Next, we consider whether Company breached an implied covenant of good faith and fair dealing. In *Hall v. Farmers Insurance Company*, 1985 OK 40, 713 P.2d 1027, the Court held that each contract "carries an implicit and mutual covenant by the parties to act toward each other in good faith" and that "neither party shall do anything that will destroy or injure another party's right to receive the fruits of the contract." 713 P.2d

at 1029–1030. The Court also held, "The implied covenant of good faith extends to a covenant not to wrongfully resort to the termination-at-will clause." *Id.*, at 1030. However, the Court later limited *Hall,* insofar as it applies to employment-at-will cases. In *Hinson v. Cameron,* the Court limited *Hall* to "the rule that an agent may recover from the principal when the latter has, in bad faith, deprived him of the fruits of his own labor." The *Hinson* Court expressly declined "to impose a duty on an employer not to terminate an at-will employee in bad faith." *Hinson,* at 554.[1] In *Burk v. K-Mart,* 1989 OK 22, 770 P.2d 24, the Supreme Court held:

> Today we hold there is no implied covenant of good faith and fair dealing that governs the employer's decision to terminate in an employment-at-will contract.

¶ 14 Although the Oklahoma Supreme Court declined to extend the covenant of good faith and fair dealing to employment-at-will contracts, its previous decision in *Hall,* supra, as it has evolved, provides that an agent who has been terminated may recover from his principal when the principal has deprived him of the fruits of his labor. Therefore, in the instant case, the only measure of contract damages is the income from commissions earned, if any remains unpaid, during Stickney's employment while performing his contract.

█ ¶ 15 The trial court must grant a motion for judgment notwithstanding the verdict, upon request of the moving party, if it should have granted a motion for directed verdict at the close of all of the evidence. *Navistar Intern. Transp. Corp. v. Vernon Truck & Equipment,* 1994 OK CIV APP 168, 919 P.2d 443; 12 O.S. Supp.1997 § 698. On review, the Court examines the evidence in the light most favorable to the party seeking relief and if any competent evidence or reasonable inference from the evidence tends to establish a cause of action, the motion for directed verdict should have been overruled.

*Navistar Intern. Transp. Corp. v. Vernon Truck & Equipment,* supra, at 446, citing *Oklahoma City v. Prieto,* 1971 OK 10, 482 P.2d 919. We hold there was insufficient evidence to prove Stickney's claim for breach of contract or breach of the implied covenant of good faith and fair dealing. The trial court should have sustained Company's motion for directed verdict. The only exception was the amount, if any, of unpaid commissions. It follows that company's motion for judgment notwithstanding the verdict should have been sustained. Again, the only exception was the amount, if any, of unpaid commissions.

█ ¶ 16 Company next contends the tort claims raised by Stickney in his amended petition were barred by the two-year statute of limitations for torts and the tort judgment should be reversed. In support of its contention, Company argues the trial court erred by allowing Stickney to amend his petition four years after the original petition was filed to add the tort claims [2]. It argues the events alleged in the tort claims did not arise out of the same transaction or occurrence as the contract claims and, therefore, the amendment does not relate back to the date the original petition was filed. See 12 O.S. Supp. 1993 § 2015(C). Although we tend to agree with Company on this issue, it is unnecessary to decide it because of our disposition of this case.

¶ 17 The tort claims raised by Stickney were based on his allegations that Company breached the employment contract in bad faith when it terminated him. However, we hold herein that Company cannot be liable for terminating Stickney for bad faith because an employment-at-will contract is terminable by either party at any time, with or without cause. Without Company's liability for breach of the employment contract, or breach of the implied covenant of good faith, the other claims fail.

---

1. See also *List v. Anchor Paint Manufacturing Co.,* 1996 OK 1, 910 P.2d 1011, for a synopsis of the Oklahoma Supreme Court's rulings on the covenant of good faith and employment-at-will contracts.

2. In addition to the tort claim of breach of the implied covenant of good faith and fair dealing, the trial court submitted to the jury the claims of deceit, interference with business relationship, right to privacy and fraud.

¶ 18 As to Stickney's claim of deceit: In addition to Stickney's allegations that he relied on Company's "promise" not to terminate him if additional tasks were performed by him, he alleged Company made false representations regarding its secret meetings with his employee and sales agents; that Company concealed its actions of spying on his activities, stealing his correspondence and instructing his employee and agents to lie; and in failing to inform him it had already decided to terminate his contract. Basic to Stickney's deceit claim is his allegation that a false promise was made to him, when Company knew otherwise, that he would not be terminated if he performed certain tasks, i.e., that the contract was amended in November, 1992. Because we specifically hold the contract was not amended, and because Company could terminate Stickney without cause, there is no basis for the deceit claim to stand.

¶ 19 As to the claim for wrongful interference with business relationship with his secretary, Stickney alleges Company used improper means of interfering with this relationship by having her secretly monitor his actions, searching his private office and encouraging his agents to complain about Stickney to the home office. He contends Company's efforts to undermine him "and to carry out an elaborate pretextual justification for terminating his contract" support the jury's finding of wrongful interference with his business through using his secretary. However, with an employment-at-will contract, Company needed *no pretextual justification* to terminate his contract. It would have no motivation to interfere intentionally with his business relationship with his secretary to supply grounds for termination. It needed none. Doing something that it was allowed to do, i.e., terminate Stickney for any reason, cannot expose Company to liability for any of the alleged tort claims.

■ ¶ 20 The verdict forms returned by the jury indicate liability on each of Stickney's tort claims against Company, in addi-

tion to the breach of contract and breach of the covenant of good faith and fair dealing claims. However, the general verdict of $841,000.00 represents the actual damages awarded for all claims,[3] with no break down for each one. Evidence of commissions earned by Stickney from his personal production and that of his agents was given at the trial. Although Company asserts it was *undisputed* that Stickney was paid all commissions and renewals he was owed by Company at the time of his termination, Stickney contends otherwise and refers to evidence, *inter alia,* which he claims supports his position that some of his earned commissions have not been paid.

¶ 21 In view of our disposition of this case, there was no statutory basis for the award of attorney fees to Stickney. Therefore, his counter appeal is denied.

¶ 22 The judgment is reversed and this cause is remanded to the trial court. On remand, the trial court is directed to enter judgment for Company except as is specifically set forth in the next paragraph.

¶ 23 Since it is impossible to determine from the appellate record before us what the court and jury decided about Stickney's claim that a portion of earned commissions have not been paid, this matter is excepted from the judgment directed in the next preceding paragraph. The trial court shall conduct such additional proceedings as are necessary and proper to finally determine this issue.

¶ 24 REVERSED AND REMANDED WITH DIRECTIONS.

¶ 25 JONES, P.J., dissents.

BUETTNER, J., concurs.

---

3. The jury found liability against Company on each of the following claims: breach of contract; breach of the covenant of good faith and fair dealing; tortious interference with business or employment relationship between plaintiff and his secretary; false representation or deceit; and invasion of privacy.