Clarence R. LIST and Linda
List, Plaintiffs,

v.

ANCHOR PAINT MANUFACTURING
COMPANY, Wanda Fowler, and
Chip Mead, Defendants.

No. 85226.

Supreme Court of Oklahoma.

Jan. 9, 1996.

---

Frederick N. Schneider, III and Mary L. Lohrke, Boone, Smith, Davis, Hurst & Dickman, Tulsa, for Plaintiffs.

Steven Anthony Broussard, J. Patrick Cremin and Judith A. Colbert, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, for Defendant.

WATT, Justice,

The United States District Court for the Northern District of Oklahoma has certified a question of state law to this Court under the Oklahoma Uniform Certification of Questions of State Law Act, 20 O.S.1991 §§ 1601, et seq. The federal court asks:

> Does Oklahoma recognize a claim for wrongful discharge in violation of public policy predicated upon conduct by an employer which the employee claims resulted in constructive discharge of that employee?

We answer no to the question asked. The parties have stipulated to the facts, and filed a joint Motion to Certify Questions of Law in the federal district court.[1] The parties' mo-

---

1. The Statement of Facts accompanying the certified question follows:

(1) Plaintiff C.R. List, age 57, worked for over thirty (30) years at Anchor Paint. Mr. List began his employment with Anchor Paint at its inception in October 1962, and continued his employment until May 23, 1994.

(2) Immediately prior to May 27, 1994, C.R. List was employed at Anchor Paint as Supervisor of Finished Goods. In that capacity, Mr. List supervised approximately twenty (20) other employees. C.R. List's annual salary at this time was $56,345.90.

(3) Plaintiff, L. List, is the wife of C.R. List. L. List was also employed by Anchor Paint and worked there for almost nineteen (19) years.

(4) L. List handled accounts payable, and her annual salary was $24,000.00.

(5) On or about May 23, 1994, C.R. List was called into a meeting at the Anchor Paint facility with Defendants, Fowler and Mead, and Plant Manager, Bob Gibson. Mr. List was informed that he was being demoted from Supervisor of Finished Goods to Head of Labeling. A younger employee, Ron Skelton, age 47, replaced Mr. List as Supervisor of Finished Goods.

(6) The demotion to Head of Labeling involved a cut in pay to $9.70/hour, resulted in loss of certain supervisory duties, reduced his decision making authority, and required greater physical exertion than his previous job.

(7) Mr. List, having determined that his new working conditions were intolerable, resigned his employment from Anchor Paint on May 27, 1994.

(8) After resigning from his employment, C.R. List sought legal advice for the purpose of filing a lawsuit against the Defendants.

(9) L. List claims that after learning that C.R. List had consulted a lawyer, Defendants engaged in hostile, retaliatory conduct aimed at her which culminated in suspension indefinitely without pay on August 31, 1994.

(10) C.R. List claims, and the Defendants deny, that the decision to demote C.R. List to Head of Labeling was based on age and was a deliberate attempt to make his working conditions so intolerable that he would voluntarily resign his employment and that this employment action constitutes a wrongful discharge in violation of the public policy of Oklahoma, as articulated in the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(b), and Oklahoma's Anti–Discrimination Act, Okla.Stat. tit. 25, § 1302.

(11) L. List also claims wrongful discharge in violation of public policy as articulated by the Age Discrimination in Employment Act of 1967, § 623(d), and Oklahoma's Anti–Discrimination Act, Okla.Stat. tit. 25, § 1302.

(12) The claims by Plaintiffs are based on the tort-based exception to the employment at will doctrine recognized and adopted in *Burk v. K–Mart Corp.*, 770 P.2d 24, 28–29 (Okla.1989), and *Tate v. Browning–Ferris Indus.* [*Browning–Ferris, Inc.*], 833 P.2d 218 [1218] (Okla.1992), in which a discharge is shown to be contrary to a clear mandate of public policy that is articulated by constitutional, statutory, or decisional law.

(13) The Oklahoma Supreme Court has not decided the specific issue of whether Oklahoma recognizes a tort claim for wrongful discharge in violation of public policy based on constructive discharge.

tion collects the Oklahoma cases and statutes relating to the issues raised by the certified question. Consequently, we have not called for additional briefs from the parties.

We answer no to the question asked because plaintiff has a statutory cause of action for wrongful discharge, which we hold to be an exclusive remedy.

In *Large v. Acme Engineering, Inc.*, 790 P.2d 1086 (Okla.1990), we refused to recognize a cause of action for wrongful discharge because the plaintiff had not left his employment. There, plaintiff claimed that he had been transferred from one job to another in violation of 85 O.S.1991 § 5, which prohibits an employer from discharging an employee because the employee filed a workers' compensation claim. We quoted with approval from several federal cases dealing with retaliatory discharge claims arising under Title VII., including the requirement that retaliatory discharge requires a "continuous pattern of discriminatory treatment," and a "single isolated instance" of discrimination is insufficient as a matter of law to support a finding of constructive discharge. *Large*, 790 P.2d at 1088–89.

In *Wilson v. Hess–Sweitzer & Brant, Inc.*, 864 P.2d 1279 (Okla.1993), we distinguished *Large* and allowed a cause of action for constructive discharge because, in *Wilson*, plaintiffs alleged that the discrimination had gone on for some time. Plaintiffs did not resign until after the retaliation had gone on from October 1988, until January and February 1989.

Whether the facts presented here would be sufficient to support a finding of constructive discharge is a question we need not reach. For the reasons set forth below, we hold that Mr. List has no common law cause of action for constructive discharge.

In *Burk v. K–Mart*, 770 P.2d 24, 28 (Okla. 1989), we adopted "the public policy exception to the at-will termination rule in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." We warned that "the public policy exception must be tightly circumscribed." *Id.* at 29.

In *Hall v. Farmers Ins. Exchange*, 713 P.2d 1027 (Okla.1985) we affirmed a jury verdict in favor of a former insurance agent against his company for damages. The defendant insurance company had terminated the agent's contract, said the agent, in order to avoid paying the agent premiums in future years from renewals of policies he had sold, and the jury agreed. We held that the agent had a cause of action against the insurance company.

We later limited *Hall*'s scope in *Hinson v. Cameron*, 742 P.2d 549, 552 (Okla.1987). There we said, "*Hall* came to be perceived as creating a new cause of action in favor of an at-will employee discharged in 'bad faith.' " We rejected this notion and held that *Hall* meant only "that an agent may recover from the principal when the latter has, in bad faith, deprived him of the fruit of his own labor," and expressly declined "to impose a duty on an employer not to terminate an at-will employee in bad faith." *Hinson*, 742 P.2d at 554. We upheld the trial court's summary judgment for the defendant hospital and against a nurse, whom the hospital had fired. We held in *Hinson* that plaintiff was not entitled to recover under any theory, including the public policy exception, "assuming that Oklahoma would apply the public policy exception." *Id.* at 557.

Next, in answering a certified question from a federal district court, we adopted the public policy exception in *Burk v. K–Mart*, 770 P.2d 24, 28 (Okla.1989). As noted, we made clear that the exception was a narrow one.

Later we held in *Tate v. Browning–Ferris*, 833 P.2d 1218 (Okla.1992) that a racially motivated discharge action under the *Burk* rule, was not preempted either by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, or by the Oklahoma anti-discrimination statutes, 25 O.S.1981 §§ 1101 *et seq.*

The case before us, while similar to *Tate* in some respects, nevertheless differs significantly. The cases are similar in that both the plaintiff in *Tate*, and plaintiff here, C.R. List, claimed violation of rights protected by a federal anti-discrimination statute. There the similarity ends, however. Mr. List's

rights are protected by the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq, while *Tate's* statutory remedy was under the Civil Rights Act of 1964.[2] The Civil rights of 1964 provides significantly less comprehensive remedies than does the Age Discrimination in Employment Act of 1967. Had we not held in *Tate* that plaintiff was entitled to assert a common law cause of action, he would have had no right to a jury trial because neither the state Act nor the Civil Rights Act provided for such a remedy. Further, plaintiff's damages would have been limited to back pay with no right to additional compensatory or punitive damages. Here, Mr. List, if successful, would have significantly greater statutory remedies than were available to the plaintiff in *Tate*. Mr. List would be entitled to a jury trial, and to punitive damages in an amount equal to his unpaid wages.[3] 29 U.S.C. § 626.

We need not extend the narrow *Burk* exception to the at-will termination rule to age discrimination claims. Mr. List has adequate remedies for age discrimination under statute. The Oklahoma anti-discrimination act, 25 O.S.1991 §§ 1101 *et seq.*, states that one of its purposes is to "provide for execution within the state of the policies embodied in ... the federal Age Discrimination in Employment Act of 1967 ... to make uniform the law of those states which enact this act." 25 O.S.1991 §§ 1101. Thus, the state and the federal Age Discrimination in Employment Act must be interpreted together to discern what an employee's rights are under state law. The statutory remedies available to plaintiff in *Tate* were significantly inferior to those available in a common law action.

The type of discrimination involved has been an important factor in courts deciding whether they will hold that statutory remedies preempt common law remedies. With few exceptions, courts have held that common law remedies for age based discriminatory discharge are either preempted by statutory remedies, as here, or do not exist at all.[4]

In *Makovi v. Sherwin–Williams Co.*, 316 Md. 603, 623, 561 A.2d 179, 189 (1989), the Maryland Court of Appeals declined to extend the reach of common law retaliatory discharge protection to a sex discrimination claim, because plaintiff had remedies under state and federal legislation. The Maryland court held that, in deciding whether a legislatively mandated public policy would support a common law retaliatory discharge claim, the court must look at each case as it arises. In its analysis, the court must insure that it "does not isolate the legislative remedy from the public policy goal, and does not consider the latter in a vacuum." We approve this method of analysis and will use it here.

The Supreme Court of New Hampshire held that age discrimination was not the sort of wrong that fell within the ambit of the common law remedy. *Howard v. Dorr Woolen Co.*, 120 N.H. 295, 297, 414 A.2d 1273, 1274 (1980). The New Hampshire court, and most other courts, have limited the common law remedy to those situations "where an employee is discharged because he performed an act that public policy would condemn." *Id.*

Most courts have refused to allow common law retaliatory discharge actions based on age or illness, saying that only a discharge arising from the employee's acts, rather than his status, will support a common law retaliatory discharge cause of action. Many of these cases are collected in *Tate*, 833 P.2d at 1223, note 21. Examples of conduct that caused employees to get fired are reporting to authorities information of an employers' unlawful or unsafe activities; refusing sexual advances of supervisors; refusing to perform

---

2. 28 U.S.C. § 1447; 42 U.S.C. §§ 1971, 1975a to 1975d, 2000a to 2000h–6.

3. The Age Discrimination in Employment Act refers to some damages as "liquidated damages," and allows them to be recovered in an amount equal to actual damages upon a finding of "willful violations" of the Act by the employer. 29 U.S.C. § 626.

4. See the comprehensive annotation on the subject of pre-emption, Pre-emption of Wrongful Discharge Cause of Action by Civil Rights Laws, 21 ALR5th 1, 25 § 3[a] (1994), which identifies state and federal cases from eleven states holding that employees could not bring common law actions for age discrimination. Those states are California, Kansas, Maine, Maryland, Massachusetts, Minnesota, Maryland, Missouri, Nevada, New Jersey, Pennsylvania, and Wisconsin.

unsafe work activities; and filing workers' compensation claims. At least one commentator has criticized the use of discrimination laws as a basis for any public policy exception to the at-will termination rule:

> The use of discrimination laws as the basis for a public policy exception has the potential to expand greatly the available remedies. Furthermore, because of this expansion of remedies, it would seem that employees would be encouraged to circumvent or ignore the very statutes on which the public policy exception is based. Why should a discharged employee go to the trouble of filing a claim with a state agency and/or the EEOC before bringing an action for back pay, when disregarding those procedures may bring the possibility of recovering not only lost wages but also a healthy sum in punitive damages?

1 L. Larson, *Unjust Dismissal* § 6.10[6][e], at 6–91 (1989).

An example of a discharge arising from retaliation to an employee's conduct, rather than his status, is *Groce v. Foster*, 880 P.2d 902 (Okla.1994). There, an employer fired an employee, who, after having been paid a workers' compensation award, brought a common law action for his personal injuries against one of his employer's customers. We held, in a five to four opinion, that the employer violated public policy by firing plaintiff for having filed his common law action against the employer's customer. The dissent in *Groce*, after first observing that the *Burk* exception is a narrow one, made the point that an "organization and its managers function more effectively in an atmosphere of trust and cooperation; when this harmony is destroyed, regardless of who is at fault, it is in the interest of all concerned to terminate the relationship." *Groce*, 880 P.2d at 911 quoting from *Kavanagh v. KLM Royal Dutch Airlines*, 566 F.Supp. 242, 244 (N.D.Ill.1983).

The majority and dissenting opinions in *Groce* show the difficulty of the decisions the Court must make in deciding between protecting the rights of wronged employees, and insuring that employers have the freedom necessary to effectively supervise their employees. Mr. List has adequate statutory remedies, and his claim is not based on retaliation for anything that he did. Instead, Mr. List's claim is based solely upon his status, his age. Because Mr. List's statutory remedies are adequate and his common law claim is based solely on his status, his statutory remedies are exclusive. Thus, he has no common law remedy for constructive discharge.

CERTIFIED QUESTION ANSWERED

ALMA WILSON, C.J., and HODGES, LAVENDER and HARGRAVE, JJ., concur.

SIMMS and OPALA, JJ., concur in result.

SUMMERS, J., concurs in part, dissents in part.

KAUGER, V.C.J., dissents.