**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 14 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LARRY DON SIMS,

      Plaintiff-Appellant,

v.

HALLIBURTON COMPANY,

      Defendant-Appellee.

No. 98-6300
(D.C. No. CIV-97-1778-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Halliburton Co. hired plaintiff Larry Don Sims, at the age of forty-nine, to be an environmental technologist at its Duncan, Oklahoma facility. Sims' duties included visiting sites that Halliburton intended to sell, assessing any environmental hazards at the sites that needed to be remedied before sale, and working with the outside contractors hired to do the remediation. Halliburton terminated Sims five years later, in the wake of an audit of one of the outside contractors. Sims brought suit against Halliburton, contending he was terminated in retaliation for reporting violations of environmental law and because of his age. He sought redress for the alleged retaliation through a state law claim for discharge in violation of public policy, and he sought redress for the alleged age discrimination through a state law claim under the Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, §§ 1101-1901 (OADA), and through a federal claim under the Age Discrimination in Employment Act, 29 U.S.C. §§621-634 (ADEA).

Halliburton filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) as to Sims' two state law claims. Halliburton challenged Sims' retaliation claim on the ground that it alleged he was discharged for making internal reports of federal law violations, which is not sufficient to establish a violation of Oklahoma public policy. Halliburton challenged Sims' OADA claim on the ground that the statute does not provide an express private right of action for age discrimination and the controlling law does not support an implied right

of action. Sims, in turn, asked the district court to certify to the Oklahoma Supreme Court the question whether an implied right of action for age discrimination exists under the OADA. See Okla. Stat. tit. 20, § 1602 (giving Oklahoma Supreme Court power to answer question of law certified to it by federal court).

The district court denied Sims' motion to certify and granted Halliburton's motion for judgment on the pleadings as to both state law claims. Thereafter, Halliburton moved for summary judgment under Fed. R. Civ. P. 56(c) on Sims' federal age discrimination claim, which the district court also granted. Sims now appeals the district court's rulings and asks that we certify several questions to the Oklahoma Supreme Court concerning both of his state law claims. We exercise jurisdiction under 28 U.S.C. § 1921 and affirm.

Turning first to the disposition of the two state law claims, we review the district court's determination of Oklahoma law de novo. See May v. National Union Fire Ins. Co., 84 F.3d 1342, 1345 (10th Cir. 1996). Our task is to achieve the same result in federal court that would have been reached in state court had the state claims been pursued there. See Perlmutter v. United States Gypsum Co., 54 F.3d 659, 662 (10th Cir. 1995). To that end, "[w]e must apply Oklahoma law as announced by the Oklahoma Supreme Court." Fields v. Farmers Ins. Co., 18 F.3d 831, 834 (10th Cir. 1994). While we are not bound by the rulings of the

lower Oklahoma courts, we will generally follow them absent compelling reasons not to. See Perlmutter , 54 F.3d at 662. If the Oklahoma Supreme Court has not decided the issues presented, "our job is to predict how that court would rule." Carl v. City of Overland Park, Kan. , 65 F.3d 866, 872 (10th Cir. 1995).

Although we apply Oklahoma law to the substantive legal issues presented by Sims' two state law claims, we review the grant of judgment on the pleadings under federal standards. See Perlmutter , 54 F.3d at 662. We apply the same standard of review to the entry of judgment on the pleadings under Rule 12(c) as we do to the dismissal of a complaint under Rule 12(b)(6). See Bishop v. Federal Intermediate Credit Bank , 908 F.2d 658, 663 (10th Cir. 1990). We review a Rule 12(b)(6) dismissal de novo, "confining our review to the allegations of the complaint and taking them as true." Doyle v. Oklahoma Bar Ass'n , 998 F.2d 1559, 1566 (10th Cir. 1993).

*State Claim for Wrongful Discharge in Violation of Public Policy*

Sims' first state claim is for wrongful discharge in violation of public policy, which he refers to as a "whistleblower" claim. To state a claim for wrongful discharge in violation of public policy, the employee must show that his discharge was either "for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." Burk v. K-Mart Corp. , 770 P.2d 24, 29 (Okla. 1989).

-4-

The public policy must be clearly articulated by "constitutional, statutory or decisional law." Id. at 28. "[A] federal statute cannot serve as an articulation of Oklahoma public policy, absent a specific Oklahoma decision, statute or constitutional provision." Griffin v. Mullinix, 947 P.2d 177, 179 (Okla. 1997).

"[T]he initial determination of public policy is a question of law to be resolved by the court." Hayes v. Eateries, Inc., 905 P.2d 778, 785 (Okla. 1995). "[C]ourts will be able to screen cases on motions to dismiss for failure to state a claim or for summary judgment if the discharged employee cannot allege a clear expression of public policy." Burk, 770 P.2d at 29 (quotation omitted). In determining whether Sims has alleged a clear expression of public policy, we are mindful of the Oklahoma Supreme Court's caution that we "tightly circumscribe public policy exceptions to the employment-at-will doctrine and not create causes of action in an effort to create policy outside the legislative channels charged with that responsibility." Griffin, 947 P.2d at 180 (quotation omitted); see also Marshall v. OK Rental & Leasing, Inc., 939 P.2d 1116, 1119 (Okla. 1997) ("[W]e must strictly construe the claimed public policy to see if a clear mandate of public policy exists.").

The allegations of Sims' complaint relating to his whistleblower claim are few, and consist entirely of the following: "Plaintiff's action is one . . . for retaliation for making internal reports of violation of federal law." Appellant's

App. at 1 (Compl. ¶ 3).  "Retaliation for internally opposing violation of federal [law] is prohibited by Oklahoma's public policy."  Id.  "One determining factor in the decision to terminate the Plaintiff was Plaintiff's age.  Another significant factor was Plaintiff's continued opposition to the actions of the Defendant in violation [of] Environmental Protection laws."  Id. at 2 (Compl. ¶ 7).  "Plaintiff's termination, which was also motivated in significant part by his continued internal reports of and opposition to violations of the environmental protection laws is contrary to Oklahoma's public policy and gives rise to the tort of wrongful discharge."  Id. at 3 (Compl. ¶ 13).

Construing the relevant allegations of Sims' complaint together, and assuming them to be true, they establish that Sims was discharged in retaliation for reporting to other Halliburton employees that Halliburton had violated federal environmental law.  In  Richmond v. ONEOK, Inc.  , 120 F.3d 205 (10th Cir. 1997), we rejected a plaintiff's claim for discharge in violation of public policy that was based on her internal reports of illegal and unethical conduct of her supervisor, stating:  "This court has already held that there is no clear mandate of Oklahoma public policy against terminating employees for whistleblowing activity."  Id. at 210-11 (citing  Burk v. K Mart Corp.  , 956 F.2d 213, 214 (10th Cir. 1991)).  Sims argues that  Richmond 's seemingly broad holding should be limited to factually similar cases, where the plaintiff's allegations do not indicate that the

wrongdoing he or she reported implicated public, rather than purely private, interests. See Hayes, 905 P.2d at 786-87 (distinguishing between whistleblowing on conduct that impacts only private or proprietary interests of employer and whistleblowing on conduct that impacts public interests). Because Sims' claim involves whistleblowing on violations of environmental law, Sims contends that the district court should not have relied on our holding in Richmond to dismiss his claim.

We need not decide whether Richmond's holding should apply here, because Sims' claim suffers from another fatal flaw: his whistleblowing related to violations of federal environmental laws, which, standing alone, do not embody a clear expression of Oklahoma public policy. See Griffin, 947 P.2d at 179. Sims raises several arguments on appeal in an attempt to circumvent this deficiency.

First, Sims simply denies that his complaint makes any reference to violations of federal law and argues, therefore, that his claim should not be so limited. See Appellant's Opening Br. at 13. As our previous quotations from the complaint indicate, this is a blatant misrepresentation of the record. In his reply brief, Sims tries a slightly different tack: he argues that the allegations referring to violations of federal law have no effect on his whistleblower claim because those allegations occur only in an earlier portion of the complaint concerning jurisdiction and venue. See Appellant's Reply Br. at 8. This argument is

disingenuous, [1] and we see no compelling reason to deviate from "the rule that appellate courts will not entertain issues raised for the first time on appeal in an appellant's reply brief." Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1277-78 (10th Cir. 1994).

Next, Sims argues that because Oklahoma has its own body of environmental law, some of which incorporates standards taken from federal law, the district court should have broadly construed his whistleblower allegations as encompassing violations of Oklahoma environmental law. Sims' complaint, however, does not contain any factual allegations from which a court could reasonably infer that any of the Oklahoma statutes Sims now cites would apply. The complaint does not specify the nature of the environmental law violations, or even allege that the violations occurred in Oklahoma. Therefore, we cannot reasonably construe Sims' whistleblowing claim to implicate any public policy expressed in Oklahoma law, clearly or otherwise.

By way of comparison, we note that the complaint in Todd v. Frank's Tong Service, Inc., 784 P.2d 47 (Okla. 1989), a case upon which Sims relies, alleged that "[the plaintiff's] termination was a direct result of his refusal to operate

---

[1] Among other things, Count II of the complaint, which sets forth Sims' claim for wrongful discharge in violation of public policy, begins by incorporating all the previous allegations of the complaint. See Appellant's App. at 3.

'motor vehicles with defective brakes, headlights and turnsignals,'" and it also cited the Oklahoma statutes that expressed the public policy the plaintiff refused to violate, id. at 50. Sims' complaint contains neither an explicit reference to Oklahoma public policy, nor any historical facts from which we could even infer the applicable public policy. [2]

Finally, Sims argues that the Oklahoma Supreme Court's decision in Wheless v. Willard Grain & Feed, Inc., 964 P.2d 204 (Okla. 1998), which was decided after the district court entered final judgment here, establishes the validity of his claim. In Wheless, the plaintiff was discharged after upper management learned that he had falsified data that was submitted to the State of Oklahoma in various environmental reports. Id. at 205. The plaintiff argued that his termination was wrongful because he was directed to falsify the reports by plant managers, who would have fired him had he refused. Id. The Oklahoma court rejected the plaintiff's claim, concluding that "[p]ublic policy commitment to environmental safety and protection is not advanced by an employee who participates in violating a state statute and keeps silent concerning the violation, even when his motivation is fear of being discharged." Id. at 206.

---

[2] In his reply brief, Sims argues that the district court should have granted his request to amend his complaint to add specific references to Oklahoma's environmental laws. Again, however, we see no reason to deviate from our general practice of not considering arguments raised for the first time in an appellant's reply brief. See Headrick, 24 F.3d at 1277-78.

Sims contends that Wheless establishes that "whistleblowing protection for reporting environmental law violations" exists under Oklahoma law and, therefore, the district court should not have dismissed his claim. Appellant's Opening Br. at 13. We reject Sims' suggestion that the rationale employed in Wheless somehow obviates the need for an employee to "allege a clear expression of public policy," Burk, 770 P.2d at 29 (quotation omitted), when the employee claims he was discharged for reporting a violation of environmental law. The Oklahoma Supreme Court has specifically refused to make any broad statements about when a discharge resulting from the "internal or external good faith reporting of employer or co-employee infractions of rules, regulations or the law pertaining to the public health safety or general welfare" may give rise to an actionable tort claim. Hayes, 905 P.2d at 787 n.7.

Instead, "the decision as to whether a certain situation does or does not fall under the Burk umbrella must be made to a large degree on a case-by-case basis." Id. Here, the allegations of Sims' complaint, if true, are inadequate to establish that he was discharged either "for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." Burk, 770 P.2d at 29. Therefore, the district court properly granted Halliburton's motion for judgment on the pleadings as to Sims' claim that he was discharged in violation of Oklahoma public policy.

-10-

*State Claim for Age Discrimination under the OADA*

The OADA prohibits discrimination in employment, public accommodation, and housing on the basis of a person's race, color, national origin, sex, religion, handicap, or age. See Okla. Stat. tit. 25, § 1302 (employment), § 1402 (public accommodation), § 1452 (housing). As originally enacted, the statute did not provide a private right of action for any victim of discrimination in employment. See Duncan v. City of Nichols Hills, 913 P.2d 1303, 1307 (Okla. 1996). In 1990, the legislature added § 1901, which provides an express right of action to victims of employment discrimination based on a handicap. Sims contends that we should imply a private right of action under the statute for victims of other types of employment discrimination, including age discrimination. Sims contends that implying a private right of action under the OADA is consistent with the test adopted by the Oklahoma Supreme Court in Holbert v. Echeverria, 744 P.2d 960, 962-65 (Okla. 1987), for implying a private right of action under a public, i.e., regulatory, statute. He also argues that if the OADA is not construed to provide a private right of action for victims of all types of prohibited discrimination, it will contravene Okla. Const. art. 5, § 46. The district court concluded that no implied right of action for age discrimination in employment existed under the OADA. Based upon our review of Oklahoma law, we agree.

Putting aside for the moment the constitutionality of the OADA's remedial scheme, we consider whether implying a private right of action comports with Oklahoma law. The Oklahoma Supreme Court has adopted the following three-pronged test for determining whether a public statute implies a private right of action. "First, the plaintiff must belong to that class for whose especial benefit the statute was enacted and the class must be narrower than the public at large." Walker v. Chouteau Lime Co., 849 P.2d 1085, 1086 (Okla. 1993) (quotations omitted). "The determination of a special class is to be effected by a narrow construction." Holbert, 744 P.2d at 963. "Second, the statute must either explicitly or implicitly give some indication the legislature intended to create a private remedy rather, than to deny one." Walker, 849 P.2d at 1086. This second prong is the central factor in the test; the other two prongs assist our search for the legislature's intent. See Holbert, 744 P.2d at 963 n.9, 964 & n.12. "Finally, the private remedy must not be inconsistent with the underlying purposes of the legislative scheme." Walker, 849 P.2d at 1087.

Applying the three-prong test to the statute before us, it appears that Sims satisfies the first prong. The employment discrimination provisions of the OADA provide protection to employees of businesses that have fifteen or more employees. See Okla. Stat. tit. 25, §§ 1301(1), 1302(A). While this class of

-12-

protected people is admittedly broad, it is not as broad as the public at large. See Holbert, 744 P.2d at 963 (holding that when a statute "is for the benefit of the general public, no special class is established for whose especial benefit it was created"). The parties do not dispute that Halliburton employs more than fifteen people, so Sims is a member of the class protected by the statute.

We turn, then, to the second prong: legislative intent. "Legislative intent is ascertained by looking at the precise wording of the Act and studying its history. Established rules of statutory construction are then applied to resolve any ambiguity." Id. at 964. In interpreting the OADA, we give weight to Oklahoma's own rules of statutory construction. See Phelps v. Hamilton, 59 F.3d 1058, 1071 (10th Cir. 1995).

As originally enacted, the OADA provided only administrative remedies to victims of employment discrimination. The Oklahoma Human Rights Commission was given "the power to receive, investigate, seek to conciliate, hold hearing on, and decide complaints alleging the [OADA's] violation." Tate v. Browning-Ferris, Inc., 833 P.2d 1218, 1227 (Okla. 1992). The Commission also was given the power to grant affirmative relief to aggrieved persons, including "hiring or reinstatement of employees with or without back pay." Okla. Stat. tit. 25, § 1505(C)(1).

In 1990, the legislature added § 1901, which gives a person who has filed an administrative charge of handicap discrimination in employment the right to bring suit in state court if the Commission does not resolve the discrimination charge to the party's satisfaction within 180 days.     Id. § 1901(A).  If the charging party brings suit, he has a right to a jury trial and he may recover nominal or actual damages and reasonable attorney fees if he prevails.     Id. § 1901(C), (D).

The plain language of the OADA, prior to its amendment in 1990, does not suggest any intent on the part of the legislature to create a private right of action for any discrimination in employment.  Nor does the subsequent addition of an express right of action for victims of handicap discrimination suggest an intent to provide a private right of action for victims of other types of employment discrimination.  To the contrary, applying the maxim that "the mention of one thing in a statute implies exclusion of another," as the Oklahoma Supreme Court did in Holbert , 744 P.2d at 965, leads to the conclusion that the Oklahoma legislature did not intend to provide a private right of action for victims of employment discrimination other than those who suffer discrimination because of a handicap.

Sims contends that legislative intent to provide a private right of action for victims of age discrimination in employment can be found in the legislature's statement that the general purpose of the OADA is to provide for execution within

-14-

Oklahoma of the policies embodied in various federal civil rights statutes, including the Age Discrimination in Employment Act. See Okla. Stat. tit. 25, §1101(a). As the Oklahoma Supreme Court recently noted, however, the text of the OADA evidences the legislature's intent to distinguish between policies and remedies. See Collier v. Insignia Fin. Group, No. 90,482, 1999 WL 326277, at *3 (Okla. May 25, 1999). While the legislature did intend to incorporate the policies of the ADEA in the OADA, the legislature did not intend to adopt the ADEA's remedial scheme as the OADA's primary remedial scheme. See id. Sims also contends that we can find legislative intent to provide a private right of action for all victims of employment discrimination in the language of Okla. Stat. tit. 12, § 1101.1, which the legislature adopted in August 1995. Section 1101.1 relates to offers of judgment in "a civil action . . . brought for the recovery of money as a result of a claim for personal injury, wrongful death or pursuant to Chapter 21 of Title 25 or Section 5 of Title 85 of the Oklahoma Statutes." Sims contends this reference to Chapter 21 of Title 25, which is the OADA, "would be meaningless if the [OADA] provided no remedy in money." Appellant's Opening Br. at 18. He further argues that the legislature must, therefore, have intended to provide a private right of action for all victims of employment discrimination under the OADA.

We agree with Sims' initial proposition that the reference to the OADA in § 1101.1 would make little sense if suits for money damages could not be brought under any provisions of the OADA. The remainder of Sims' argument, however, overlooks the fact that by 1995, when the legislature adopted § 1101.1, the OADA expressly provided that a civil action for money damages could be maintained by any victim of discrimination in housing and by a victim of handicap discrimination in employment. See Okla. Stat. tit. 25, §§ 1502.14-.15, 1901. Therefore, we need not construe the OADA as implying a private right of action for all victims of discrimination in employment to give meaning to the language of § 1101.1.

Nor do we find any recognition in the opinions of the Oklahoma Supreme Court that the OADA provides a private right of action for victims of employment discrimination other than those who are handicapped. In Tate v. Browning-Ferris, upon which Sims relies heavily, the Oklahoma Supreme Court considered the remedies available to an alleged victim of racial discrimination and retaliation. At the heart of its analysis was its determination that

> [t]he Act here in contest [the OADA] does not provide a private right of action to a person aggrieved by racially discriminatory practices if the Commission does not resolve the claim to his satisfaction. In contrast, it does afford a private right of action for discrimination based on handicap.

-16-

Tate, 833 P.2d at 1229. While it is true that the court viewed the OADA's provision of disparate remedies to victims of discrimination in employment as potentially violative of the Oklahoma Constitution, id. at 1229-30, it is equally true that the court did not resolve the problem by construing the OADA to imply a private right of action for all victims of employment discrimination. Rather, the court construed the OADA as not establishing "the sole remedy for racially discriminatory practices," which left victims of racial discrimination free to pursue common-law claims, including a tort claim for wrongful discharge in violation of public policy. Id. at 1230-31.

The Oklahoma Supreme Court has since reiterated that victims of employment discrimination other than handicap discrimination are limited to administrative remedies under the OADA. See, e.g., Collier, 1999 WL 326277, at *4 ("[W]hile the Act gives discharged victims of handicap discrimination a private cause of action against the offending employer, it only provides an administrative remedy for victims of quid pro quo sexual harassment.") (footnote omitted); Atkinson v. Halliburton Co., 905 P.2d 772, 777 (Okla. 1995) ("The statute [OADA] provided no private cause of action, therefore, an aggrieved party could not vindicate his rights in court without having a common-law claim."); Brown v. Ford, 905 P.2d 223, 227 (Okla. 1995) ("Work-related sexual discrimination is remediable against an employer in an administrative proceeding

brought under the provisions of 25 O.S. 1991 §§ 1101 et seq.") (footnote omitted).

Based upon our careful review of the OADA and of the cases interpreting it, we discern no intent on the part of the Oklahoma legislature to imply a private right of action for victims of discrimination in employment, other than as expressly provided in § 1901 for victims of handicap discrimination. We may imply a private right of action in the OADA only if all three prongs of the test are met. See Welty v. Martinaire of Okla., Inc., 867 P.2d 1273, 1275-76 (Okla. 1994). Because Sims has not established the second, and central, prong of the test, we need not consider whether the third prong would be met here.

Our conclusion that the OADA does not provide a private right of action for age discrimination in employment ends our analysis of whether the district court properly granted Halliburton judgment on Sims' OADA claim. We need not consider whether, in the absence of an implied right of action, the OADA violates Oklahoma's Constitution. Sims has not sought a declaration on the constitutionality of the OADA, and that issue is not properly before us. [3]

Based upon our analysis of Sims' OADA claim, we also conclude that the district court did not abuse its discretion in refusing to certify the issue to the Oklahoma Supreme Court for decision. See Coletti v. Cudd Pressure Control,

_____

[3]     Nor has the Attorney General of Oklahoma been notified of a constitutional challenge to the OADA, as required by Fed. R. Civ. P. 24(c).

-18-

165 F.3d 767, 775 n.7 (10th Cir. 1999) ("The decision whether to certify a question of state law to the state supreme court is left to the discretion of the district court."). "[I]t has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment." Meredith v. City of Winter Haven, 320 U.S. 228, 234 (1943). While "[c]ertification is a useful procedure," it "is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." Copier By & Through Lindsey v. Smith & Wesson Corp., 138 F.3d 833, 838 (10th Cir. 1998) (quotation omitted). Although no Oklahoma court has issued a decision directly addressing whether there is an implied right of action for age discrimination in employment under the OADA, the issue is not unusually difficult to decide under Oklahoma law, and it does not appear likely that the Oklahoma Supreme Court would recognize Sims' right of action. Therefore, we conclude the district court did not abuse its discretion in refusing to certify the issue to the Oklahoma Supreme Court.

*Federal Claim for Age Discrimination under the ADEA*

We review the district court's grant of summary judgment on Sims' ADEA claim de novo, applying the same standards as the district court under Fed. R. Civ. P. 56(c). See Diamond Bar Cattle Co. v. United States, 168 F.3d 1209, 1211 (10th Cir. 1999). Pursuant to Rule 56(c), summary judgment is appropriate only when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Although "[w]e view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, . . . the nonmoving party must make a showing sufficient to establish an inference of the existence of each element essential to the case." Aramburu v. Boeing Co., 112 F.3d 1398, 1402 (10th Cir. 1997) (quotations and citation omitted).

Sims contends his age was a determining factor in his termination, while Halliburton contends Sims was terminated in connection with his violation of a work rule. To establish a prima facie case of discriminatory discharge, Sims had to show that he is a member of the protected class, that the reason given for his discharge was violation of a work rule, and that similarly situated younger employees were treated differently. See id. at 1403.

"Once the plaintiff has established a prima facie case, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory

-20-

reason for the employee's rejection." EEOC v. Flasher, 986 F.2d 1312, 1316 (10th Cir. 1992) (quotation omitted). "[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied on was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." Id.

Once the defendant meets its burden of production, the plaintiff "must then present evidence raising a genuine issue that his termination was the result of his [protected status] or that the reason offered by [the employer] was a mere pretext." Aramburu, 112 F.3d at 1403. "At the summary judgment stage, if the plaintiff can show a prima facie case of discrimination and present evidence that the employer's proffered nondiscriminatory reason is a mere pretext, the case should go to the factfinder." Id.

For purposes of our analysis, we will assume without deciding that Sims established a prima facie case of age discrimination. See id. (assuming without deciding that Title VII plaintiff established prima facie case). Next, we consider whether Halliburton articulated a legitimate, nondiscriminatory reason for terminating Sims. Halliburton presented evidence that Sims was discharged for accepting gifts from an outside vendor of more than nominal value, in violation of company policy, and then failing to reveal his receipt of the gifts during two subsequent audits of the vendor conducted by Halliburton. This is a legitimate

-21-

and nondiscriminatory reason for Sims' termination. Halliburton having met its burden of production, "the presumption of discrimination established by the prima facie showing simply drops out of the picture." Id. (quotation omitted). We turn, then, to the dispositive inquiry in this case: whether Sims presented evidence raising a genuine issue that his termination was the result of his age or that the reason advanced by Halliburton was a mere pretext. See id.

Halliburton contends that Sims' claim fails at this step because Sims stated repeatedly in his deposition that the real reason he was fired was because of his whistleblowing activities. Sims testified that he and his supervisor, Mark Kehnemund, had a personality conflict, that Kehnemund thought he was a "loose cannon," and that he was a major thorn in the side of Kehnemund and others at Halliburton because of his forceful and continuous insistence that Halliburton fix a host of environmental problems at sites throughout the country before selling the sites. In Marx v. Schnuck Markets, Inc., 76 F.3d 324, 328 (10th Cir. 1996), we stated that "if a civil rights plaintiff concedes, for purposes of establishing pretext, that the sole reason for the discharge was a motive prohibited by a law entirely different from the one under summary judgment scrutiny, such a concession mandates grant of summary judgment as to the latter claim."

In his deposition, Sims conceded that the primary reason he was fired was because of his unpopular whistleblowing activities, but he did not abandon his

-22-

claim that age was also a motivating factor. To prevail on his ADEA claim, Sims need not show that his age was "the sole motivating factor in the employment decision;" he need show only that his age "was also a reason for the employer's decision and that it was the factor that made a difference." Elmore v. Capstan, Inc., 58 F.3d 525, 530 (10th Cir. 1995) (quotations omitted). While some portions of Sims' testimony cast doubt on his age having made a difference in the termination decision, other portions support his age discrimination claim, so we will proceed with our analysis of pretext.

"[I]n a disparate treatment case, pretext may be shown by reference to other similarly situated non-minority employees receiving disparate discipline." Id. "The infractions giving rise to the comparison need not involve exactly the same offenses; they need only be of comparable seriousness." Flasher, 986 F.2d at 1316. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." Aramburu, 112 F.3d at 1404 (quotation omitted). Although "[t]he younger employee need not be outside the ADEA-protected class[, he or she] cannot be insignificantly younger because evidence that such an employee was [treated differently] would be insufficient to create an inference of illegal discrimination." Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1167 n.4 (10th Cir.), cert. denied, 119 S. Ct. 617 (1998).

The evidence showed that one of the outside contractors Sims worked with extensively in making environmental reports and doing remediation on the sites was OVAC, the owner and president of which was Kirby Vinson. Halliburton audited OVAC in 1995 and found that some Halliburton employees had violated a company policy prohibiting employees from accepting gifts of more than a nominal value from an outside vendor. Kehnemund issued letters of reprimand to Sims and two other employees for accepting shrimp and steak from OVAC. In the letter, Kehnemund warned Sims that accepting gifts worth more than $25.00 was a violation of company policy and could result in his termination. The two other employees who received letters of reprimand were Ron Bechtel, who was Sims' age, and Matt Ratliff, who was considerably younger.

In 1996, Halliburton performed a follow-up audit of OVAC and discovered a 1992 bill for a $228.00 golf club that Sims had purchased and Kirby Vinson had paid for. Sims had not told the auditors about the golf club during the 1995 audit, and although the auditors gave him an opportunity to disclose all gifts during the 1996 audit, he again failed to disclose that he had received the golf club until the auditors confronted him with the bill. In November 1996, Kehnemund terminated Sims for what he perceived as Sims' violations of company policy and his dishonest response to the audits.

Sims contends that the stated reason for his termination is unworthy of belief and is a mere pretext. First, he contends that other employees committed equally or more serious offenses without being disciplined. As evidence, Sims points to his deposition testimony that Jed DiPaolo (the Vice President of Halliburton), Zeke Zeringue, Dale Jones, Ron Bechtel, and Matt Ratliff all received gifts from outside vendors. This testimony does not constitute appropriate evidence. First, Sims did not indicate that he had any firsthand knowledge that these employees received outside gifts, other than Ron Bechtel. See Aramburu , 112 F.3d at 1405 (rejecting deposition testimony not based on firsthand knowledge). Second, Sims' testimony did not indicate that any of these employees, other than Ratliff, was younger and similarly situated to him. Although we draw all reasonable inferences in Sims' favor, we may not infer from Sims' testimony that either DiPaolo, Zeringue, or Jones was a younger, similarly-situated employee. [4] See id. Finally, Sims admitted that he had no idea whether Ratliff or any of the others he identified reported their receipt of the gifts to management, either before or after they received them.

Next, Sims argues that pretext can be inferred from the fact that Ratliff was merely given a warning for the same conduct that led to Sims' termination. The undisputed evidence shows, however, that both Ratliff and Sims were treated

---

[4]     Although Bechtel was similarly situated, he was the same age as Sims.

similarly in connection with infractions revealed in the 1995 audit. Sims was discharged only after he also failed to disclose the receipt of gifts in the 1996 audit. Ratliff was not implicated in the 1996 audit.

Sims contends the distinction between the 1995 and 1996 audits is immaterial because he received the golf club long before he received Kehnemund's 1995 letter of reprimand, and he did not commit a new infraction of company policy before the 1996 audit. This argument overlooks the fact that Sims' discharge was based in part on his failure to disclose his receipt of gifts during the 1996 audit. Sims' evidence simply "does not allow for a comparison which eliminates nondiscriminatory reasons for differential treatment." Id. at 1406.

Sims also contends that pretext can be inferred from the fact that the auditors did not discover the bill for the golf club until the 1996 audit. Sims did not offer any evidence suggesting there was anything nefarious in the auditors' discovery of the bill during the 1996 audit, however. He merely expressed his own suspicion that the auditors planted the bill to catch him. Mere speculation cannot create a genuine issue of material fact. See Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988). Moreover, Sims did not offer any evidence connecting the auditors' actions with Kehnemund, who was the sole decisionmaker in Sims' discharge.

Sims argues a jury also could infer pretext from Halliburton's failure to cite to any company policy that approves, much less mandates, termination for Sims' infractions. Sims cites no legal authority for his suggestion that a company policy must mandate termination before it can form the basis for termination. Further, he admits there was a company policy against the acceptance of gifts of more than nominal value, that he was well aware of the policy, that he knew Kehnemund interpreted the policy to mean gifts in excess of $25.00, and that Kehnemund had warned him that he could be terminated for accepting gifts in excess of $25.00. Sims also admits that the golf club he received from Kirby Vinson was worth substantially more than $25.00 and that he failed to disclose his receipt of that gift during either of the two audits.

Finally, Sims argues a jury could infer pretext from evidence that he was not involved in deciding with which vendors Halliburton would contract, that he had no motive to lie about the golf club, and that he had simply forgotten about the gift. Again, however, these facts do not cast doubt on the credibility of Halliburton's articulated reason for Sims' discharge. "The ADEA does not require [the employer's] business decisions to be wise–just nondiscriminatory." Beaird, 145 F.3d at 1169. While "there may be circumstances in which a claimed business judgment is so idiosyncratic or questionable that a factfinder could

reasonably find that it is a pretext for illegal discrimination," id., this case does not present such circumstances.

Sims does not contend that he presented any direct evidence of age discrimination, and our review of the record reveals no genuine issue of material fact as to whether Halliburton's stated reason for discharging Sims was unworthy of belief. Therefore, we conclude the district court properly entered summary judgment in favor of Halliburton on Sims' claim for age discrimination under the ADEA.

The judgment of the district court is AFFIRMED. Appellant's motion to certify questions of state law is DENIED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge